**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MAURICE SPORTING GOODS, INC., | ) | |
| | ) | Case No.: 1:15-cv-11652 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| BB HOLDINGS, INC. d/b/a BUCK BOMB, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT BB HOLDINGS, INC. d/b/a BUCK BOMB'S AMENDED ANSWERS AND**
**AFFIRMATIVE DEFENSES TO PLAINTIFF MAURICE SPORTING GOODS, INC.'S**
**COMPLAINT FILED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, AND**
**COUNTERCLAIM AGAINST PLAINTIFF**

COMES NOW Defendant BB Holdings, Inc. d/b/a Buck Bomb ("Buck Bomb"), by and through undersigned counsel, and for its Amended Answers and Affirmative Defenses to Plaintiff's Complaint filed in the Circuit Court of Cook County, Illinois and Counterclaim Against Plaintiff, states as follows:

**Introduction**

1.      The allegations contained in paragraph 1 of the Introduction of Plaintiff's Complaint state legal conclusions to which no answer is required, and further, they are compound.  To the extent that the allegations contained therein are deemed factual allegations against Buck Bomb or otherwise require a response, Buck Bomb denies the allegations contained in of the Introduction of Plaintiff's Complaint.

**Parties**

2.      Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 2 of the Parties section of Plaintiff's

Complaint.

3.　　　Buck Bomb admits that it is a corporation organized under the laws of Maryland as stated in paragraph 3 of the Parties section of Plaintiff's Complaint, but denies that its principal place of business is in Crofton, Maryland. For further answer to said allegation, Buck Bomb's principal place of business is located in Odenton, Maryland.

## Jurisdiction

4.　　　Buck Bomb denies the allegations contained in paragraph 4 of the Jurisdiction section of Plaintiff's Complaint.

5.　　　Buck Bomb denies the allegations contained in paragraph 5 of the Jurisdiction section of Plaintiff's Complaint.

6.　　　Buck Bomb denies the allegations contained in paragraph 6 of the Jurisdiction section of Plaintiff's Complaint.

## Venue

7.　　　Buck Bomb denies the allegations contained in paragraph 7 of the Venue section of Plaintiff's Complaint.

## Facts Common to All Counts of the Complaint

8.　　　Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 8 of the Facts Common to All Counts of the Complaint section of Plaintiff's Complaint.

9.　　　Buck Bomb admits the allegations contained in paragraph 9 of the Facts Common to All Counts of the Complaint section of Plaintiff's Complaint.

10.　　　Buck Bomb admits the allegations contained in paragraph 10 of the Facts Common to All Counts of the Complaint section of Plaintiff's Complaint.

11.     Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 11 of the Facts Common to All Counts of the Complaint section of Plaintiff's Complaint.

12.     Buck Bomb denies the allegations contained in paragraph 12 of the Facts Common to All Counts of the Complaint section of Plaintiff's Complaint.

## COUNT I – BREACH OF WRITTEN CONTRACT

13.     Buck Bomb realleges and reincorporates into Count I its responses to paragraphs 1-12 above, as if fully set forth herein.

14.     Buck Bomb admits the allegations contained in paragraph 14 of Count I of Plaintiff's Complaint.

15.     Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 15 of Count I of Plaintiff's Complaint.

16.     Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 16 of Count I of Plaintiff's Complaint.

17.     Buck Bomb admits the allegations contained in paragraph 17 of Count I of Plaintiff's Complaint.

18.     Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 18 of Count I of Plaintiff's Complaint.

19.     Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 19 of Count I of Plaintiff's Complaint.

20.     Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 20 of Count I of Plaintiff's Complaint.

21.     The allegations contained in paragraph 21 of Count I of Plaintiff's Complaint

state legal conclusions to which no answer is required. To the extent that the allegations contained therein are deemed factual allegations against Buck Bomb or otherwise require a response, Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 21 of Count I of Plaintiff's Complaint.

22. Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 22 of Count I of Plaintiff's Complaint.

23. Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 23 of Count I of Plaintiff's Complaint.

24. Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 24 of Count I of Plaintiff's Complaint.

Buck Bomb denies that Plaintiff is entitled to the relief requested in the "WHEREFORE" paragraph immediately following paragraph 24 of COUNT I of Plaintiff's Complaint.

## COUNT II – BREACH OF ORAL CONTRACT – ALLEGED IN THE ALTERNATIVE TO COUNTS I AND III

25. Buck Bomb realleges and reincorporates into Count I its responses to paragraphs 1-24 above, as if fully set forth herein.

26. Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 26 of Count II of Plaintiff's Complaint.

27. Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 27 of Count II of Plaintiff's Complaint.

28. Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 28 of Count II of Plaintiff's Complaint.

29. Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on

that basis denies, the allegations contained in paragraph 29 of Count II of Plaintiff's Complaint.

30. Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 30 of Count II of Plaintiff's Complaint.

31. Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 31 of Count II of Plaintiff's Complaint.

32. Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 32 of Count II of Plaintiff's Complaint.

33. The allegations contained in paragraph 33 of Count II of Plaintiff's Complaint state legal conclusions to which no answer is required. To the extent that the allegations contained therein are deemed factual allegations against Buck Bomb or otherwise require a response, Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 33 of Count II of Plaintiff's Complaint.

34. Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 34 of Count II of Plaintiff's Complaint.

35. Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 35 of Count II of Plaintiff's Complaint.

36. Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 36 of Count II of Plaintiff's Complaint.

Buck Bomb denies that Plaintiff is entitled to the relief requested in the "WHEREFORE" paragraph immediately following paragraph 36 of COUNT II of Plaintiff's Complaint.

## COUNT III – UNJUST ENRICHMENT – ALLEGED IN THE ALTERNATIVE TO COUNTS I AND II

37.　　Buck Bomb realleges and reincorporates into Count I its responses to paragraphs 1-36 above, as if fully set forth herein.

38.　　Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 38 of Count III of Plaintiff's Complaint.

39.　　Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 39 of Count III of Plaintiff's Complaint.

40.　　Buck Bomb admits the allegations contained in paragraph 40 of Count III of Plaintiff's Complaint.

41.　　Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 41 of Count III of Plaintiff's Complaint.

42.　　Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 42 of Count III of Plaintiff's Complaint.

43.　　Buck Bomb lacks knowledge sufficient to form a belief as to the truth of, and on that basis denies, the allegations contained in paragraph 43 of Count III of Plaintiff's Complaint.

Buck Bomb denies that Plaintiff is entitled to the relief requested in the "WHEREFORE" paragraph immediately following paragraph 43 of COUNT III of Plaintiff's Complaint.

## AFFIRMATIVE DEFENSES

COMES NOW Defendant BB Holdings, Inc. d/b/a Buck Bomb ("Buck Bomb"), by and through undersigned counsel, and submits the following affirmative defenses applicable to all counts of Plaintiffs' Complaint.

### First Affirmative Defense

Further answering and for its first affirmative defense, Plaintiff fails to state a claim upon which relief can be granted because Plaintiff first materially breached the parties' long-standing distribution agreement.

Second Affirmative Defense

### Second Affirmative Defense

Further answering and for its second affirmative defense, Buck Bomb states that Plaintiff failed to mitigate its damages by distributing the product as agreed to pursuant to the parties' long-standing distribution agreement and business relationship.

### Third Affirmative Defense

Further answering and for its third affirmative defense, Buck Bomb states that Plaintiff's alleged damages, if any, were caused or contributed to be caused by Plaintiff's own actions or inactions, including making misrepresentations pertaining to Buck Bomb and its business practices and status.

### Fourth Affirmative Defense

Further answering and for its fourth affirmative defense, Buck Bomb states that Plaintiff acted fraudulently by making material misrepresentations pertaining to its distribution of Buck Bomb product in 2014 intending to induce Buck Bomb to send product to Plaintiff which Plaintiff did not intend to distribute pursuant to their long-standing distribution agreement and

Page 7 of 25

business relationship.

## Fifth Affirmative Defense

Further answering and for its fifth affirmative defense, Buck Bomb states that Plaintiff's claims are barred based upon the equitable defense of unclean hands in that they took actions which did or attempted to sabotage a business relationship between Buck Bomb and Walmart and other retailers, including making misrepresentations about Buck Bomb and its business, for which they now seek damages, the existence of such damages being specifically denied by Buck Bomb.

## Sixth Affirmative Defense

Further answering and for its sixth affirmative defense, Buck Bomb states that Plaintiff is estopped from bringing its claims for damages against Buck Bomb because they failed to comply with the long-standing distribution agreement between the parties regarding the distribution of Buck Bomb's products, failed to maintain their end of the distribution agreement and attempted to sabotage a business relationship between Buck Bomb and Walmart and other retailers, including making misrepresentations about Buck Bomb and its business, for which they now claim damages, the existence of such damages being specifically denied by Buck Bomb.

## Seventh Affirmative Defense

Further answering and for its seventh affirmative defense, Buck Bomb states that Plaintiff waived its rights through its actions to the receipt of any monetary damages, because they made misrepresentations about Buck Bomb and its business which caused the damages they now claim.

### Eighth Affirmative Defense

Further answering and for its eighth affirmative defense, that Plaintiff's alleged damages, the existence of which are specifically denied by Buck Bomb, are the result of illegality and unlawful actions taken on the part of Plaintiff, through intentional and negligent misrepresentations about Buck Bomb and its business and, therefore, Buck Bomb is not liable for the same.

### Ninth Affirmative Defense

Further answering and for its ninth affirmative defense, Buck Bomb states that Plaintiff waived its rights through its actions to the receipt of any monetary damages, because they made misrepresentations about Buck Bomb and its business which caused the damages they now claim.

### Tenth Affirmative Defense

Further answering and for its tenth affirmative defense, Buck Bomb states that Plaintiff's alleged damages, the existence of which are specifically denied by Buck Bomb, are the result of illegality and unlawful actions taken on the part of Plaintiff, through intentional and negligent misrepresentations about Buck Bomb and its business and, therefore, Buck Bomb is not liable for the same.

### Eleventh Affirmative Defense

Further answering and for its eleventh affirmative defense, Buck Bomb states that the alleged agreement between the parties, as stated in Plaintiff's Complaint, violates the statue of frauds.

## COUNTERCLAIM

COMES NOW Defendant, Counter-Plaintiff BB Holdings, Inc. d/b/a Buck Bomb, by and through undersigned counsel, pursuant to Rule 13 of the Federal Rules of Civil Procedure, and for its Counterclaim against Plaintiff, Counter-Defendant Maurice Sporting Goods, Inc., states as follows:

## THE PARTIES

1.      Defendant, Counter-Plaintiff BB Holdings, Inc. d/b/a Buck Bomb ("Buck Bomb") is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business in the State of Maryland.

2.      Plaintiff, Counter-Defendant Maurice Sporting Goods, Inc. ("Plaintiff") was and is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in the State of Illinois.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between Buck Bomb and Plaintiff, and the amount in controversy exceeds the sum of $75,000 pursuant to Plaintiff's Complaint.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this judicial district.

5.      Further, pursuant to the Rule 13 of the Federal Rules of Civil Procedure, a party rightfully before the court may file a counterclaim against an opposing party.

## FACTS APPLICABLE TO ALL COUNTS

6.      Buck Bomb had been selling products such as The Buck Bomb, a deer urine attractant used in hunting (the "Product") to Plaintiff for approximately 10 years, in which

Plaintiff would then distribute Buck Bomb's products to retailers, including but not limited to Walmart, through a distribution agreement.

7.     Buck Bomb's total Walmart sales began to stagnate in 2011.

8.     Toward the end of 2013, Walmart had a new representative working with Plaintiff on Buck Bomb's account

9.     Buck Bomb attempted to realize a greater profit margin on its sales by working directly with Walmart and other retailers.

10.     In 2013, Buck Bomb approached Walmart regarding selling its products directly to Walmart and procuring display space for its products on islands and end caps in Walmart stores in order to maximize profits and reduce profit stagnation.

11.     Walmart agreed to allow Buck Bomb to sell the Product directly to Walmart beginning in 2014, and both Walmart and Buck Bomb agreed to notify Plaintiff.

12.     Buck Bomb notified Plaintiff of this change to its business relationship, and Plaintiff acquiesced to the same.

13.     Upon information and belief, Walmart communicated with Plaintiff regarding procuring and selling Buck Bomb's items in 2014, including the Product, Buck Bomb Ignitors ("Ignitors"), and Buck Bomb Detonator Wicks ("Wicks"), directly from Buck Bomb.

14.     However, upon information and belief, Plaintiff then complained to Walmart regarding the change in the business relationship and the long-standing distribution agreement between Plaintiff and Buck Bomb.

15.     Sometime thereafter, Walmart requested that Buck Bomb continue to provide its products to Walmart via the distribution agreement with Plaintiff for the calendar year 2014, and suggested that Buck Bomb would provide its products, including the Product, Ignitors, and

Wicks, via direct sale to Walmart beginning in calendar year 2015.

16.     Buck Bomb agreed to Walmart's request regarding 2014 distribution of the Product and other items and continued distribution directly through Plaintiff per the long-standing distribution agreement.

17.     In 2014 and in accordance with the parties' long-standing distribution agreement, Buck Bomb shipped the Product, in addition to Ignitors and Wicks, to Plaintiff, pursuant to purchase orders provided by Walmart to Plaintiff and in sufficient quantities to fulfill all purchase orders placed by Walmart and other retailers with Plaintiff.

18.     Plaintiff, however, failed to fully supply Walmart and other retailers with the Product, Ignitors and Wicks, as required by business relationship and agreement.

19.     Plaintiff purposely and intentionally held back product they had procured from Buck Bomb which was being requested by Walmart and other retailers.

20.     When Walmart inquired, Plaintiff told Walmart that they were waiting on Buck Bomb for the Products, Ignitors and Wicks, which was false.

21.     Plaintiff falsely represented to Walmart that they did not know where the Product and other items from Buck Bomb were.

22.     Plaintiff also represented to Walmart that Buck Bomb was having business problems, with knowledge that such statement was false or with conscious disregard for its truth or falsity.

23.     Instead, Plaintiff had the Product and other Buck Bomb items in their possession but was intentionally holding them and not releasing them to Walmart and other retailers in breach of the long-standing distribution agreement and in an attempt to damage Buck Bomb.

24.     Plaintiff had a significant amount of the Product and other items that were never uncrated, despite the demand by retailers, including not limited to Walmart, who were requesting the same.

25.     At all times relevant hereto, Buck Bomb was not having business problems and, in fact, its total sales grew significantly in 2014, despite its Walmart sales dropping.

26.     Upon information and belief, Plaintiff represented to Walmart that they could sell a substantially similar deer attractant to the Product, Haze Aerosol Deer Attractant ("Haze"), to supplant the Product.

27.     Upon information and belief, at the same time that Plaintiff was misrepresenting to Walmart Buck Bomb's business position and ability to produce the Product and other items per Walmart's request, Plaintiff, by and through Big Game International, produced, commissioned, and/or supported the production of Haze in order to compete with and/or supplant the Product at Walmart and other retailers.

28.     Upon information and belief, Plaintiff was misrepresenting to vendors and retailers at a trade show that it had a product similar or the same to the Product, including representing it had a similar top to the unique one on the Product, which it did not in fact have.

29.     Upon information and belief, Plaintiff's misrepresentations to Walmart and others were meant to compete with and supplant Buck Bomb's items, including but not limited to the Product.

30.     Upon information and belief, Plaintiff's misrepresentations to Walmart and others were in retaliation for and a direct result of Buck Bomb seeking to maximize its profits by dealing directly with certain retailers, including Walmart.

31.     Upon information and belief, Plaintiff's misrepresentations to Walmart and others

were meant to ruin Buck Bomb's business and impugn their reputation.

32.     As a result of Plaintiff's misrepresentations and failure to comport with its agreements with Buck Bomb, Buck Bomb sustained significant damages.

### COUNT I – BREACH OF ORAL CONTRACT

33.     Buck Bomb incorporates herein by reference the allegations contained in paragraphs 1 through 32 as if fully set forth herein.

34.     For approximately 10 years, Buck Bomb and Plaintiff had a long-standing distribution agreement wherein Plaintiff was obligated to distribute Buck Bomb products nationally to retailers.

35.     Buck Bomb provided Plaintiff with products, including the Product, Ignitor, and Wicks, for distribution to retailers nationally and otherwise performed all of its obligations under the long-standing distribution agreement.

36.     Plaintiff breached the long-standing distribution agreement in that it failed to distribute Buck Bomb's products, including the Product, Ignitors and Wicks, to retailers as they agreed to do, and withheld Buck Bomb products it had procured for distribution in contravention of the long-standing distribution agreement.

37.     The long-standing distribution agreement constitutes a valid and enforceable contract.

38.     Plaintiff's failure to distribute Buck Bomb's products pursuant to the long-standing distribution agreement constitutes a breach of the parties' agreement.

39.     As a result of Plaintiff's breach, Buck Bomb has suffered monetary damages.

WHEREFORE, Buck Bomb respectfully requests this Honorable Court enter judgment in its favor and against Plaintiff, award damages in an amount in excess of $75,000, to be proven at

trial, plus pre and post-judgment interest and costs, and for such other and further relief as this Court deems just and proper.

## COUNT II – INTENTIONAL INTERFERENCE WITH A
## PROSPECTIVE ECONOMIC ADVANTAGE OR BUSINESS OPPORTUNITY

40.     Buck Bomb incorporates herein by reference the allegations contained in paragraphs 1 through 39 as if fully set forth herein.

41.     Buck Bomb had a relationship with Walmart and other vendors as sellers of Buck Bomb products, including the Product, Ignitors, and Wicks.

42.     Toward the end of 2013, Buck Bomb had direct communications with Walmart regarding selling its products directly to Walmart in order to increase sales and profit margins.

43.     After meeting with Walmart, Walmart agreed to purchase and receive Buck Bomb's products directly from Buck Bomb, including the Product, Ignitors, and Wicks.

44.     Plaintiff was aware of these communications and this relationship and business agreement between Walmart and Buck Bomb.

45.     Plaintiff purposely withheld Buck Bomb products in its possession meant for distribution to Walmart and other retailers in order to damage Buck Bomb.

46.     Plaintiff purposely misrepresented Buck Bomb's financial and/or business status to Walmart and/or other retailers in order to ruin Buck Bomb's reasonable business expectancy or relationship with Walmart.

47.     As a result of Plaintiff's breach, Buck Bomb has suffered monetary damages.

WHEREFORE, Buck Bomb respectfully requests this Honorable Court enter judgment in its favor and against Plaintiff, award damages in an amount in excess of $75,000, to be proven at trial, plus pre and post-judgment interest and costs, and for such other and further relief as this

Court deems just and proper.

## COUNT III – TORTIOUS INTERFERENCE WITH A
## PROSPECTIVE ADVANTAGE OR BUSINESS OPPORTUNITY

48.     Buck Bomb incorporates herein by reference the allegations contained in paragraphs 1 through 47 as if fully set forth herein.

49.     Buck Bomb had a relationship with Walmart and other retailers as sellers of Buck Bomb products, including the Product, Ignitors, and Wicks.

50.     In 2013, Buck Bomb met with Walmart wherein Buck Bomb agreed to sell to Walmart, and Walmart agreed to buy from Buck Bomb, beginning in 2014, Buck Bomb products directly from Buck Bomb, as opposed to through a third-party distributor such as Plaintiff.

51.     Buck Bomb had a reasonable expectancy of entering into a direct business relationship with Walmart.

52.     Plaintiff was aware of the reasonable expectancy of Buck Bomb and Walmart entering into a direct business relationship for the sale of Buck Bomb's products.

53.     Nevertheless, upon information and belief, Plaintiff complained regarding this arrangement and persuaded Walmart to delay the aforementioned business agreement until 2015.

54.     Upon information and belief, Plaintiff further made numerous misrepresentations to Walmart and/or other retailers regarding Buck Bomb's business and business status in order to prevent the realization of the direct business relationship between Buck Bomb and Walmart and/or other retailers.

55.     Plaintiff also withheld Buck Bomb's products from Walmart and/or other retailers in an attempt to misrepresent the viability and business status of Buck Bomb and interfere with Buck Bomb's realization of the direct business relationship with Walmart and/or other retailers.

56.     As a result of Plaintiff's breach, Buck Bomb has suffered monetary damages.

WHEREFORE, Buck Bomb respectfully requests this Honorable Court enter judgment in its favor and against Plaintiff, award damages in an amount in excess of $75,000, to be proven at trial, plus pre and post-judgment interest and costs, and for such other and further relief as this Court deems just and proper.

## COUNT IV – VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

57.     Buck Bomb incorporate, herein by reference the allegations contained in paragraphs 1 through 56 as if fully set forth herein.

58.     Buck Bomb had a relationship with Walmart and other retailers as sellers of Buck Bomb products, including the Product, Ignitors, and Wicks.

59.     In 2014, Plaintiff procured product from Buck Bomb pursuant to their long-standing distribution agreement for distribution to Walmart and other retailers.

60.     However, instead of fully distributing the products received from Buck Bomb consistent with past practices and the parties' long-standing distribution agreement, Plaintiff engaged in deceptive and unfair trade practices to wit, *inter alia*:

  a.      by making deceptive or disparaging representations regarding Buck Bomb;

  b.      by making misrepresentations regarding Buck Bomb's business status;

  c.      by making misrepresentations regarding Buck Bomb's business practices;

  d.      by making misrepresentations regarding Buck Bomb's financial viability;

  e.      by making misrepresentations regarding Buck Bomb's ability to produce product;

f.        by withholding Buck Bomb products it had in its possession in order to harm Buck Bomb and create misunderstanding by Walmart and other retailers;

g.        by disparaging Buck Bomb and its services or business through false and misleading representations pertaining to the health, viability, and stability of Buck Bomb's business;

h.        by advertising that it would distribute Buck Bomb's products, including the Product, Ignitors, and Wicks, while intending not to distribute them as advertised;

i.        by advertising that it would distribute Buck Bomb's products, including the Product, Ignitors, and Wicks, while intending not to supply reasonably expected demand; and

j.        by passing off substantially similar product to that of the Product as produced by another company when it was really involved in the production and/or distribution of said substantially similar product.

61.    As a result of Plaintiff's actions, Buck Bomb has suffered monetary damages.

WHEREFORE, Buck Bomb respectfully requests this Honorable Court enter judgment in its favor and against Plaintiff, award damages in an amount in excess of $75,000, to be proven at trial, plus pre and post-judgment interest and costs, attorneys' fees, and for such other and further relief as this Court deems just and proper.

### COUNT V – FRAUDULENT MISREPRESENTATION

62.    Buck Bomb incorporates herein by reference the allegations contained in paragraphs 1 through 61 as if fully set forth herein.

63.    Buck Bomb had a relationship with Walmart and other retailers as sellers of Buck

Bomb products, including the Product, Ignitors, and Wicks.

64.     In 2014, Plaintiff procured product from Buck Bomb pursuant to their long-standing distribution agreement for distribution to Walmart and other retailers.

65.     Plaintiff represented that in 2014 it would distribute Buck Bomb's products as it had before to Walmart and other retailers pursuant to the parties' long-standing distribution agreement.

66.     In so representing, Plaintiff misrepresented its intentions and made false statements of material fact to Buck Bomb, specifically that it would distribute Buck Bomb's products as it had before to Walmart and other retailers pursuant to the parties' long-standing distribution agreement.

67.     In making such representations, Plaintiff intended to and did induce Buck Bomb to send Plaintiff its products, including the Product, Ignitors ,and Wicks allegedly for distribution to Walmart and other retailers pursuant to the parties' long-standing distribution agreement.

68.     Moreover, Plaintiff falsely represented to others that Buck Bomb was unable to meet its business obligations and responsibilities under its agreement with Walmart and other retailers to supply the Product, Ignitors and Wicks, to wit, *inter alia*:

      a.     by making deceptive or disparaging representations regarding Buck Bomb;

      b.     by making misrepresentations regarding Buck Bomb's business status;

      c.     by making misrepresentations regarding Buck Bomb's business practices;

      d.     by making misrepresentations regarding Buck Bomb's financial viability;

      e.     by making misrepresentations regarding Buck Bomb's ability to produce product;

      f.     by withholding Buck Bomb products it had in its possession in order to

harm Buck Bomb and create misunderstanding by Walmart and other retailers;

g.      by disparaging Buck Bomb and its services or business through false and misleading representations pertaining to the health, viability and stability of Buck Bomb's business;

h.      by advertising that it would distribute Buck Bomb's products, including the Product, Ignitors and Wicks, while not distributing them as advertised; and

i.       by advertising that it would distribute Buck Bomb's products, including the Product, Ignitors and Wicks, while not to supplying the products as ordered and reasonably expected by Walmart and/or other retailers.

69.     Plaintiff knew its statements and intentions were false.

70.     Buck Bomb did act and send Plaintiff its products, without knowledge of the above misrepresentations by Plaintiff, and was justified in doing so based upon on Plaintiff's representations and given the parties' long-standing distribution agreement and business relationship.

71.     Plaintiff breached its duty willfully and recklessly and its conduct was outrageous because of its evil motive or reckless indifference to the rights of and duties owed to Buck Bomb and others.

72.     As a result of Plaintiff's actions, Buck Bomb has suffered monetary damages.

WHEREFORE, Buck Bomb respectfully requests this Honorable Court enter judgment in its favor and against Plaintiff, and award Buck Bomb its costs and punitive damages in an amount sufficient to deter Plaintiff and others from such conduct in the future, and for such other and further relief as this Court deems just and proper.

## COUNT VI – NEGLIGENT MISREPRESENTATION

73.     Buck Bomb incorporates herein by reference the allegations contained in paragraphs 1 through 72 as if fully set forth herein.

74.     At all times relevant hereto, Plaintiff and Buck Bomb had a long-standing distribution agreement wherein Plaintiff agreed and owed a duty to Buck Bomb to distribute Buck Bomb products, including the Product, Ignitors, and Wicks, to Walmart and other retailers, and represented to Buck Bomb and others that it would so distribute.

75.     Plaintiff breached said duty to Buck Bomb to distribute Buck Bomb products, including the Product, Ignitors, and Wicks, to Walmart and other retailers by misrepresenting its willingness to continue to distribute Buck Bomb products and also misrepresenting material facts pertaining to the procurement and supply of Buck Bomb products and Buck Bomb's business status to Walmart and other retailers to wit, inter alia:

a.      by making deceptive or disparaging representations regarding Buck Bomb;

b.      by making misrepresentations regarding Buck Bomb's business status;

c.      by making misrepresentations regarding Buck Bomb's business practices;

d.      by making misrepresentations regarding Buck Bomb's financial viability;

e.      by making misrepresentations regarding Buck Bomb's ability to produce product;

f.      by withholding Buck Bomb products it had in its possession in order to harm Buck Bomb and create misunderstanding by Walmart and other retailers;

g.      by disparaging Buck Bomb and its services or business through false and

misleading representations pertaining to the health, viability and stability of Buck Bomb's business;

h.    by advertising that it would distribute Buck Bomb's products, including the Product, Ignitors, and Wicks, while not distributing them as advertised; and

i.    by advertising that it would distribute Buck Bomb's products, including the Product, Ignitors, and Wicks, while not to supplying the products as ordered and reasonably expected by Walmart and/or other retailers.

76.    Buck Bomb reasonably relied upon the misrepresentations made by Plaintiff; and

77.    As a result of Plaintiff's actions, Buck Bomb has suffered monetary damages.

WHEREFORE, Buck Bomb respectfully requests this Honorable Court enter judgment in its favor and against Plaintiff, and award Buck Bomb its costs, pre and post-judgment interest, damages sufficient to reasonably compensate Buck Bomb for its losses, and punitive damages in an amount sufficient to deter Plaintiff and others from such conduct in the future, and for such other and further relief as this Court deems just and proper.

## COUNT VII – CONSTRUCTIVE FRAUD

78.    Buck Bomb incorporate herein by reference the allegations contained in paragraphs 1 through 77 as if fully set forth herein.

79.    At all times relevant hereto, Plaintiff and Buck Bomb had a long-standing distribution agreement wherein Plaintiff agreed and owed a duty to Buck Bomb to distribute Buck Bomb products, including the Product, Ignitors, and Wicks, to Walmart and other retailers, and represented to Buck Bomb and others that it would so distribute.

80.    Plaintiff breached said duty to Buck Bomb to distribute Buck Bomb products, including the Product, Ignitors, and Wicks, to Walmart and other retailers by misrepresenting its willingness to continue to distribute Buck Bomb products and also misrepresenting material facts pertaining to the procurement and supply of Buck Bomb products and Buck Bomb's business status to Walmart and other retailers to wit, inter alia:

a.    by making deceptive or disparaging representations regarding Buck Bomb;

b.    by making misrepresentations regarding Buck Bomb's business status;

c.    by making misrepresentations regarding Buck Bomb's business practices;

d.    by making misrepresentations regarding Buck Bomb's financial viability;

e.    by making misrepresentations regarding Buck Bomb's ability to produce product;

f.    by withholding Buck Bomb products it had in its possession in order to harm Buck Bomb and create misunderstanding by Walmart and other retailers;

g.    by disparaging Buck Bomb and its services or business through false and misleading representations pertaining to the health, viability and stability of Buck Bomb's business;

h.    by advertising that it would distribute Buck Bomb's products, including the Product, Ignitors, and Wicks, while not distributing them as advertised; and

i.    by advertising that it would distribute Buck Bomb's products, including the Product, Ignitors, and Wicks, while not to supplying the products as

ordered and reasonably expected by Walmart and/or other retailers.

81. Buck Bomb reasonably relied upon the representations made by Plaintiff, as did Walmart and other retailers.

82. Upon information and belief, as a result of Plaintiff's actions, Plaintiff gained a business advantage through the sale and distribution of a competitive product to that of the Product, that is Haze, in an attempt to supplant the Product and gain an advantage over Buck Bomb.

83. Plaintiff gained an advantage by relying on the trust and confidence of Buck Bomb built upon approximately 10 years of a business relationship and based upon a long-standing distribution agreement.

84. As a result of Plaintiff's actions, Buck Bomb has suffered monetary damages.

85. Plaintiff breached its duty willfully and recklessly and its conduct was outrageous because of its evil motive or reckless indifference to the rights of and duties owed to Buck Bomb and others.

WHEREFORE, Buck Bomb respectfully requests this Honorable Court enter judgment in its favor and against Plaintiff, and award Buck Bomb its costs and punitive damages in an amount sufficient to deter Plaintiff and others from such conduct in the future, and for such other and further relief as this Court deems just and proper.

**DEFENDANT/COUNTERCLAIM PLAINTIFF DEMANDS TRIAL BY JURY**

Respectfully submitted,

_____

Richard I. Woolf, #06304328
Allison E. Lee, #06304864
**BOYLE BRASHER LLC**
One Metropolitan Square
211 N. Broadway, Ste. 2300
St. Louis, Missouri 63102
(314) 621-7700
(314) 621-1088 (facsimile)
rwoolf@boylebrasher.com
**Attorneys for Defendant**
**BB HOLDINGS, INC. d/b/a BUCK BOMB**


## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of January, 2016, Defendant BB Holdings, Inc. d/b/a Buck Bomb's Amended Answer, Affirmative Defenses and Counterclaim was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing service on the following:  Phillip Reed and Jeff Stevenson, Patzik, Frank & Samotny Ltd., 150 S. Wacker Drive, Suite 1500, Chicago, IL 60606.

5159837

_____