**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MAURICE SPORTING GOODS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15-cv-11652 |
| v. | ) | |
| | ) | |
| BB HOLDINGS, INC. d/b/a BUCK BOMB, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maurice Sporting Goods, Inc. ("Maurice") has moved the Court to dismiss the counterclaims and to strike the affirmative defenses of Defendant BB Holdings, Inc., d/b/a Buck Bomb ("Buck Bomb"). (R.20). In response, Buck Bomb voluntarily dismissed its counterclaims (R.26) and withdrew its Fourth, Ninth, and Tenth Affirmative Defenses. (R.25, Response Br. at 2). Accordingly, the Court denies Maurice's motion as moot with respect to Buck Bomb's counterclaims and its Fourth, Ninth, and Tenth Affirmative Defenses.

The Court herein analyzes Buck Bomb's First, Second, Third, Fifth, Sixth, Seventh, Eighth, and Eleventh Affirmative Defenses under Federal Rule of Civil Procedure 12(f). For the following reasons, Maurice's motion to strike is granted in part and denied in part. The Court strikes, without prejudice, Buck Bomb's First, Second, Third, Fifth, Sixth, Seventh, and Eighth Affirmative Defenses. The Court denies Maurice's motion to strike Buck Bomb's Eleventh Affirmative Defense.

# BACKGROUND

Maurice is a wholesale sporting goods distributor. (R.2-1, Compl. ¶ 8). It works with vendors, such as Buck Bomb, to sell, distribute, and service certain products to retailers. (*Id.* ¶ 11). Buck Bomb, in particular, manufactures a product line of scent dispersal systems for use in hunting. (*Id.* ¶ 9). Maurice alleges that, for approximately eight years, it and Buck Bomb "had an ongoing business relationship pursuant to which Maurice would wholesale Buck Bomb products to retailers." (*Id.* ¶ 10). During the course of that "business relationship," however, Buck Bomb "unilaterally decided to sell Buck Bomb products directly to Maurice-supplied retailers." (*Id.* ¶ 12). As a result, around January 2015, Maurice and Buck Bomb "formally sought to end their relationship." (*Id.*).

Maurice alleges—and Buck Bomb does not dispute—that in January 2015, "Maurice and Buck Bomb entered into a written agreement via e-mail wherein Maurice agreed to return all Buck Bomb product in Maurice's possession for which it had received an invoice from Buck Bomb." (*Id.* ¶ 14; R.14, Am. Answer ¶ 14) (the "Buy-Back Agreement").[1] Buck Bomb, in turn, agreed to buy back the product in Maurice's inventory, subject to certain credits. (R.2-1, Compl. ¶ 15).[2] Maurice alleges that Buck Bomb has failed to remit payment of $88,932.66 in breach of the parties' written agreement. (*Id.* ¶ 20). Maurice now seeks to recover that payment, alleging breach of written contract (Count I), and, alternatively, breach of oral contract (Count II) and unjust enrichment (Count III).

In its Amended Answer, Buck Bomb pled eleven affirmative defenses and counterclaimed against Maurice for breach of oral contract, intentional and tortious interference

---

[1] Buck Bomb further admits that Maurice has complied with the terms of this written agreement. (R.14, Am. Answer ¶ 17).

[2] Buck Bomb denies this specific allegation. (R.14, Am. Answer ¶ 15).

with a prospective economic advantage, violation of the Illinois Uniform Deceptive Trade Practices Act, fraudulent misrepresentation, negligent misrepresentation, and constructive fraud. (R.14, Am. Answer). According to Buck Bomb, it "did not fully buy back the products from Plaintiff" because it "later learned that Plaintiff had previously breached the parties' distribution agreement by failing to distribute Buck Bomb products." (R.25, Response Br. at 2). Buck Bomb's counterclaims discuss Maurice's alleged misconduct with more specificity, (*see* R.14, Am. Answer ¶¶ 6-32 ("Facts Applicable to All Counts")), but, because Buck Bomb has voluntarily dismissed those counterclaims, the Court does not look to them in ruling on this motion. Instead, the Court analyzes only whether Buck Bomb's First, Second, Third, Fifth, Sixth, Seventh, Eighth, and Eleventh Affirmative Defenses, as currently pled, satisfy federal pleading standards.

## LEGAL STANDARD

Pursuant to Rule 12(f), the Court can strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f); *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). "Affirmative defenses will be stricken 'only when they are insufficient on the face of the pleadings.'" *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (quoting *Heller Fin. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)). "Motions to strike are not favored and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense, and are inferable from the pleadings." *Id.* (citations and quotations omitted).

It is appropriate, however, "for the court to strike affirmative defenses that add unnecessary clutter to a case." *Davis v. Elite Mortgage Servs.*, 592 F. Supp. 2d 1052, 1058 (N.D.

Ill. 2009) (citing *Heller*, 883 F.2d at 1295). "It is also true that because affirmative defenses are subject to the pleading requirements of the Federal Rules of Civil Procedure, they must set forth a 'short and plain statement' of all the material elements of the defense asserted; bare legal conclusions are not sufficient." *Id.* (citing *Heller*, 883 F.2d at 1294; Fed.R.Civ.P. 8(a); *Renalds v. S.R. G. Rest. Grp.*, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000)). The Court—along with many others in this district—examines affirmative defenses by reference to *Twombly*'s "plausibility" pleading standard. *See, e.g.*, *State Farm Fire & Cas. Co. v. Electrolux Home Products, Inc.*, No. 10 C 7651, 2011 WL 133014 (N.D. Ill. Jan. 14, 2011) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Edwards v. Mack Trucks, Inc.*, 310 F.R.D. 382, 386 (N.D. Ill. 2015) ("While the Seventh Circuit has not addressed whether the *Twombly–Iqbal* standard applies to affirmative defenses, judges in this district have generally found these requirements to apply"). District courts have considerable discretion under Rule 12(f). *See Delta*, 554 F.3d at 1141-42.

## ANALYSIS

"An affirmative defense is one that admits the allegations in the complaint, but avoids liability, in whole or in part, by new allegations of excuse, justification or other negating matters." *Riemer v. Chase Bank USA, N.A.*, 274 F.R.D. 637, 639 (N.D. Ill. 2011); *see also Sloan Valve Co. v. Zurn Indus., Inc.*, 712 F. Supp. 2d 743, 749 (N.D. Ill. 2010) ("the basic concept of an affirmative defense is an admission of the facts alleged in the complaint, coupled with the assertion of some other reason defendant is not liable") (citation omitted). Federal Rule of Civil Procedure 8(c) specifically enumerates certain affirmative defenses. *See* Fed.R.Civ.P. 8(c). In addition, the Seventh Circuit "has identified two approaches for determining whether a defense not specifically enumerated in Rule 8(c) is an affirmative defense: . . . (a) if the defendant bears the burden of proof under state law or (b) if it [does] not controvert the plaintiff's proof." *See*

*Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 872 (7th Cir. 2012) (citation and quotation omitted).

With these principles in mind, the Court examines each challenged Affirmative Defense.

## I.    Affirmative Defense No. 1 (Material Breach – Excuse)

Affirmative Defense No. 1 states that Plaintiff cannot recover "because Plaintiff first materially breached the parties' long-standing distribution agreement."  (R.14, Am. Answer at 7).  Maurice challenges this as an improper affirmative defense.  In particular, Maurice argues that its own purported "material breach" of a "distribution agreement" does not negate Buck Bomb's liability under "an entirely separate contract" – that is, the Buy-Back Agreement.  (R.21, Opening Br. at 14).  In response, Buck Bomb argues that "the Buy-Back Agreement is merely part of the parties' larger long-standing distribution agreement."  Maurice's prior material breach of that larger agreement, Buck Bomb reasons, excuses its own non-performance under the Buy-Back Agreement.  (R.25, Response Br. at 4).

Buck Bomb's pleading—particularly without reference to its now-inoperative counterclaims—contains no allegations plausibly suggesting the existence of an oral "distribution agreement" encompassing the Buy-Back Agreement at issue in this case.  Here, the parties agree that they had an "ongoing business relationship," (*see* R.14, Am. Answer ¶ 10), but neither party alleges facts raising the inference of an enforceable agreement between the two parties, except with respect to the Buy-Back Agreement.  A proper affirmative defense must be based on matters "inferable from the pleadings."  *Williams*, 944 F.2d at 1400.  This defense is, thus, improper.  The Court further notes that Buck Bomb has failed to identify the grounds upon which its generalized "material breach" allegations rest and, therefore, has failed to satisfy *Twombly* pleading standards.  *See Twombly*, 550 U.S. at 555.

In view of these pleading defects, the Court strikes Affirmative Defense No. 1, but grants Buck Bomb the opportunity to re-plead.  In striking without prejudice, the Court notes that, under Illinois law,[3] "a material breach of a contract provision will justify non-performance by the other party."  *See Israel v. Nat'l Canada Corp.*, 276 Ill. App. 3d 454, 461, 658 N.E.2d 1184, 1190 (1st Dist. 1995); *Eager v. Berke*, 11 Ill. 2d 50, 54, 142 N.E.2d 36, 39 (1957) ("It is a good defense to an action on the contract, that the obligation to perform the act required was dependent upon some other thing which the other party was to do, and has failed to do") (citation omitted); *see also Carpenter v. Ford Motor Co.*, 761 F. Supp. 62, 66 (N.D. Ill. 1991) (refusing to strike "prior material breach" affirmative defense and noting that "[u]nder basic contract principles, a material breach of contract may be excused if the other party commits a material breach first").[4]

Here, Affirmative Defense No. 1 seeks to "avoid[] liability" by offering "new allegations of excuse, justification or other negating matters."  *See Riemer*, 274 F.R.D. at 639.  This may be a proper affirmative defense, *see id.*, assuming Buck Bomb can demonstrate the existence of a contract encompassing the Buy-Back Agreement.  It is not, however, adequately pled, for the reasons explained above.  *See Nationwide Advantage Mortgage Co. v. Mortgage Servs. III, LLC*, No. 13 C 83, 2013 WL 2403654, at *2 (N.D. Ill. May 31, 2013) (recognizing the "prior material breach" defense as a proper affirmative defense, but striking for failure to include supporting

---

[3] In a diversity case, as here, "the legal and factual sufficiency of an affirmative defense is examined with reference to state law."  *Williams*, 944 F.2d at 1400.  Although never explicitly addressing the issue, Maurice and Buck Bomb both appear to apply Illinois law.

[4] Illinois courts have further recognized that a prior *non-material* breach "does not serve as an affirmative defense invalidating [a party's] additional obligation under the same contract."  *Rohr Burg Motors, Inc. v. Kulbarsh*, 2014 IL App (1st) 131664, ¶ 61, 17 N.E.3d 822, 841 (1st Dist. Aug. 25, 2014); *cf. Truserv Corp. v. Chaska Bldg. Ctr., Inc.*, No. 02 C 1018, 2003 WL 924509, at *21 (N.D. Ill. Mar. 6, 2003) (striking "the affirmative defense related to [plaintiff's] material breach" for failure to allege a material breach).

facts).  If Buck Bomb can allege facts (*i*) plausibly suggesting the existence of a broader "distribution agreement" related to (and consistent with) the Buy-Back Agreement, and (*ii*) giving Maurice "fair notice" of Buck Bomb's material breach allegations, *see Twombly*, 550 U.S. at 555, Affirmative Defense No. 1 may constitute a permissible and adequately pled affirmative defense.  The Court strikes Affirmative Defense No. 1 without prejudice.

## II.  Affirmative Defense No. 2 (Mitigation of Damages)

Affirmative Defense No. 2 states that Plaintiff "failed to mitigate its damages by distributing the product as agreed to pursuant to the parties' long-standing distribution agreement and business relationship."  (R.14, Am. Answer at 7).  "[F]ailure to mitigate damages is an affirmative defense under Illinois law."  *Kensington Rock Island Ltd. P'ship v. Am. Eagle Historic Partners*, 921 F.2d 122, 125 (7th Cir. 1990).  As Maurice recognizes, however, the duty to mitigate only arises once the breach occurs and the non-breaching party sustains injury.  *See Amalgamated Bank of Chicago v. Kalmus & Assocs., Inc.*, 318 Ill. App. 3d 648, 658, 741 N.E.2d 1078, 1086 (1st Dist. 2000) ("The duty to mitigate damages imposes a duty on the injured party to exercise reasonable diligence and ordinary care in attempting to minimize his damages after injury has been inflicted") (citation and quotation omitted).  Here, Maurice alleges that Buck Bomb breached the Buy-Back Agreement by failing to remit the $88,932.66 due thereunder. (R.2-1, Compl. ¶¶ 20, 23-24).  As currently pled, Buck Bomb's allegations regarding Maurice's conduct *before* Buck Bomb's alleged breach, therefore, do not bear on a mitigation defense.  The Court strikes, without prejudice, Affirmative Defense No. 2.

## III.  Affirmative Defense No. 3 (Contribution)

Affirmative Defense No. 3 states that Plaintiff caused or contributed to its own alleged damages, including by "making misrepresentations pertaining to Buck Bomb and its business

practices and status." (R.14, Am. Answer at 7). Here, as with Buck Bomb's insufficient "material breach" allegations, Buck Bomb fails to give Maurice "fair notice" of this defense and the grounds upon which it rests. *See Twombly*, 550 U.S. at 555.

In briefing, Buck Bomb slightly clarifies its allegations, arguing that "Plaintiff made negligent misrepresentations to Buck Bomb regarding the distribution of its products and to Wal-Mart and other retailers regarding the availability and quality of Buck Bomb products and the financial status of Buck Bomb." (R.25, Response Br. at 7). "In doing so, Plaintiff decreased the demand for and availability of Buck Bomb products, ultimately increasing the amount of product in its inventory for which it now claims not to have been compensated." (*Id.* at 7-8) (the "Alleged Misconduct"). These allegations, however, do not appear in Buck Bomb's pleading. The Court strikes Affirmative Defense No. 3, without prejudice to include additional factual allegations to support this defense. *See State Farm*, 2011 WL 133014 at *2 (directing defendant to include additional details in amended pleading); *Palomares v. Second Fed. Sav. & Loan Ass'n of Chicago*, No. 10-CV-6124, 2011 WL 2111978, at *5 (N.D. Ill. May 25, 2011) (granting defendant leave "to cure any technical deficiencies by amending its answer to allege additional facts").

Maurice, however, contends that this defense—among others—is unviable even if Buck Bomb returns with additional factual support. (R.27, Reply Br. at 5-7). The Court addresses Maurice's remaining arguments on this point.

First, Maurice argues, Buck Bomb may not repackage its "contract claim" into a "misrepresentation claim," citing *United States ex rel. Yannacopoulos v. General Dynamics*, 652 F.3d 818, 836 (7th Cir. 2011). *Yannacopoulos*, however, examined falsity for purposes of the False Claims Act and, in any event, does not stand for the proposition that a defendant may not

assert an affirmative defense sounding in negligence where it also asserts one sounding in contract. *See id.* The Court further notes that, although Illinois contract law does not recognize a "contract doctrine of contributory or comparative negligence," it does recognize that a breaching party is "not liable for the harm that occurred solely as a result of the [non-breaching party's] acts." *Outboard Marine Corp. v. Babcock Indus., Inc.*, 106 F.3d 182, 184-85 (7th Cir. 1997). Buck Bomb's proposed affirmative "contribution" defense, therefore, is relevant to damages. *See id.* at 185 ("it does not follow from the absence of a general duty of care on the part of contract promisees that a promisee's fault is irrelevant *in computing damages*") (emphasis in original). Because Buck Bomb would not be liable under contract principles "for the harm that occurred solely as a result of [Maurice's] acts," *see id.*, Affirmative Defense No. 3 is a proper affirmative defense. *See Riemer*, 274 F.R.D. at 639 (noting that an affirmative defense "avoids liability, in whole or in part").

Next, Maurice argues that Buck Bomb has failed to "allege any of the elements, let alone supporting facts, of a negligent misrepresentation defense." (R.27, Reply Br. at 5-6) (citing *Continental Bank, N.A. v. Meyer*, No. 88 C 8197, 1990 WL 147052, at *2 (N.D. Ill. Sept. 27, 1990)). To the extent Buck Bomb is relying upon a negligent misrepresentation theory to support its affirmative defenses, the Court agrees. As noted above, however, the Court grants Buck Bomb leave to re-plead.

Finally, Maurice argues that "Buck Bomb makes no link between Maurice's 'misrepresentations' and how they negate Maurice's claims regarding [the] entirely separate" Buy-Back Agreement. (R.27, Reply Br. at 7). As noted above, however, Buck Bomb's briefing attempts to make this link, and the Alleged Misconduct may bear on Maurice's damages

recovery and/or Buck Bomb's contractual liability.  The Court, thus, grants Buck Bomb leave to re-plead Affirmative Defense No. 3.

## IV.     Affirmative Defense No. 5 (Unclean Hands)

Affirmative Defense No. 5 states that the equitable defense of unclean hands bars Plaintiff's claims, in that Plaintiff "took actions which did or attempted to sabotage a business relationship between Buck Bomb and Walmart and other retailers, including making misrepresentations . . . ."  (R.14, Am. Answer at 8).

Maurice alleges unjust enrichment in Count III of the Complaint, requesting an award of "damages," as well as other "equitable and just" relief, based on its allegations that it "has conferred a benefit upon Buck Bomb" which Buck Bomb has unjustly retained.  (R.2-1, Compl. ¶¶ 37-43).  Illinois law recognizes unjust enrichment as an equitable doctrine, and the unclean hands doctrine as an affirmative defense thereto.  *See Long v. Kemper Life Ins. Co.*, 196 Ill. App. 3d 216, 218-19, 553 N.E.2d 439, 440 (2d Dist. 1990) ("Plaintiffs instituted an equitable action for unjust enrichment.  It is a basic maxim of equity that he who seeks equity must do equity . . . according to the doctrine of 'unclean hands' if plaintiffs were guilty of misconduct, the trial court could bar them from recovering the interest, even if they were otherwise entitled to it"); *TRW Title Ins. Co. v. Sec. Union Title Ins. Co.*, 153 F.3d 822, 829 (7th Cir. 1998) ("If the unclean hands defense tells us one thing, it is that equity doesn't find a benefit unjust where a plaintiff, through his own misconduct, intentionally places himself at risk"); *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, No. 02 C 2523, 2003 WL 1720073, at *5 (N.D. Ill. Mar. 31, 2003) (noting that the "doctrine of unclean hands is a properly designated and frequently raised

affirmative defense, though not enumerated in Rule 8(c)"). Given Maurice's alternative unjust enrichment claim, the unclean hands defense is available to Buck Bomb.[5]

As with the previous affirmative defenses, however, neither the Court nor Maurice can infer which "actions" or "misrepresentations" Buck Bomb is referring to on the face of its pleading. The Court further notes that the unclean hands defense is only applicable where the alleged misconduct was "in connection with the very transaction being considered or complained of" and where the actions constituted "misconduct, fraud or bad faith toward the defendant[.]" *Cunningham v. EquiCredit Corp. of Illinois*, 256 F. Supp. 2d 785, 797-98 (N.D. Ill. 2003); *see also Long*, 196 Ill. App. 3d at 219 (noting the same). Here, Buck Bomb fails to include any facts establishing the essential elements of the unclean hands defense. In view of these pleading defects, the Court strikes Affirmative Defense No. 5 without prejudice.

## V.  Affirmative Defense Nos. 6 (Estoppel) and 7 (Waiver)

Affirmative Defense No. 6 states that Plaintiff "is estopped from bringing its claims for damages against Buck Bomb because [it] failed to comply with the long-standing distribution agreement . . . and attempted to sabotage a business relationship . . . including [by] making

---

[5] The Court recognizes that the unclean hands doctrine is not a defense to a legal action for contract damages, such as Maurice's Counts I and II. *See, e.g.*, *RBS Citizens, N.A. v. Sanyou Imp., Inc.*, No. 11 C 1820, 2011 WL 2712744, at *4 (N.D. Ill. July 13, 2011); *see also Zahl v. Krupa*, 365 Ill. App. 3d 653, 658 (2d Dist. 2006) ("[T]he unclean hands doctrine bars only equitable remedies and does not affect legal rights"). The Court notes, however, that Maurice may ultimately recover under its alternative unjust enrichment theory (Count III). Because the Court reasonably infers from the Complaint that Maurice seeks to disgorge an alleged benefit from Buck Bomb, the Court finds that the unclean hands defense is applicable as to Count III. *See, e.g.*, *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 518-19 (7th Cir. 2011) (noting that unjust enrichment "seeks to disgorge a benefit that the defendant unjustly retains"); *see also Raintree Homes, Inc. v. Vill. of Long Grove*, 209 Ill. 2d 248, 257, 807 N.E.2d 439, 445 (2004) (noting that courts "may also award restitution in money[,]" as "measured by the defendant's unjust gain").

misrepresentations . . . ." (R.14, Am. Answer at 8). Affirmative Defense No. 7 states that

Plaintiff "waived its rights through its actions to the receipt of any monetary damages[.]" (*Id.*).

Under Illinois law, waiver and equitable estoppel are affirmative defenses to a breach of

contract action. *See R & B Kapital Dev., LLC v. N. Shore Cmty. Bank & Trust Co.*, 358 Ill. App.

3d 912, 921, 832 N.E.2d 246, 255 (1st Dist. 2005); *see also* Fed.R.Civ.P. 8(c) (enumerating these

defenses). But, here again, Buck Bomb does not identify any facts plausibly suggesting the

existence of a "long-standing distribution agreement" or constituting the complained-of

"actions." Moreover, Buck Bomb does not point to any specific allegations in the pleadings that

satisfy the essential elements of either defense. *See id.* 358 Ill. App. 3d at 922 (explaining the

waiver and estoppel defenses); *see also Nat'l Council on Comp. Ins., Inc. v. Am. Int'l Grp., Inc*.,

No. 07 C 2898, 2009 WL 466802, at *10 (N.D. Ill. Feb. 23, 2009) (reciting the elements of

equitable estoppel under Illinois law). Given this failure, the Court strikes, without prejudice,

Affirmative Defense Nos. 6 and 7. *See Sloan Valve Co*., 712 F. Supp. 2d at 755 (noting that

"waiver, estoppel and laches are equitable defenses that must be pled with the specific elements

required to establish the defense") (citation omitted); *Reis Robotics USA, Inc. v. Concept Indus.,

Inc.*, 462 F. Supp. 2d 897, 907 (N.D. Ill. 2006) (same).

## VI.     Affirmative Defense No. 8

Affirmative Defense No. 8 states that Plaintiff's alleged damages "are the result of

illegality and [the] unlawful actions taken on the part of Plaintiff[.]" (R.14, Am. Answer at 9).

According to Buck Bomb, this affirmative defense "alleges that the [Buy-Back Agreement] is

void because of illegal and unlawful conduct." (R.25, Response Br. at 8). Buck Bomb is correct

that, under Illinois law, a contract "may be voided where its execution was obtained through

fraud, duress, illegality or mistake." *Hurd v. Wildman, Harrold, Allen & Dixon*, 303 Ill. App. 3d

84, 91, 707 N.E.2d 609, 614 (1st Dist. 1999); *see also Jones v. Sabis Educ. Sys., Inc.*, No. 98 C 4252, 2000 WL 369720, at *2 (N.D. Ill. Apr. 7, 2000) (recognizing "illegality (and consequent unenforceability)" as a proper affirmative defense to a contract action under Federal Rule of Civil Procedure 8(c)). Buck Bomb fails, however, to allege or point to any facts constituting or supporting its allegations of "illegality." The Court therefore strikes, without prejudice, Affirmative Defense No. 8.

## VII.    Affirmative Defense No. 11

Affirmative Defense No. 11 states that "the alleged agreement between the parties, as stated in Plaintiff's Complaint, violates the statute of frauds." (R.14, Am. Answer at 9). The Court agrees with Buck Bomb that this affirmative defense is proper and well-plead.

As an initial matter, the Court notes that the statute of frauds may be properly pled as an affirmative defense. *See* Fed.R.Civ.P. 8(c). Unlike the other affirmative defenses, moreover, the factual basis for Buck Bomb's statute of frauds defense is inferable from the pleadings. Specifically, Maurice seeks to recover $88,932.66 arising from the re-purchase of goods under either a written contract theory, or—in the alternative—an oral contract or an unjust enrichment theory. (R.2-1, Compl. ¶¶ 14-15, 20, 24, 32, 36, 40, 43). If Maurice is unable to prevail on its written contract theory, a statute of fraud defense may be viable. *See* 810 ILCS 5/2-201(1) ("a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought").

In reply, Maurice argues that Buck Bomb has admitted to the Buy-Back Agreement's written existence in pleading and in briefing. (R.27, Reply Br. at 7-8). The Court notes, however, that Buck Bomb has denied (on the basis of a lack of knowledge) material elements of

the written agreement, speaking to its validity and enforceability. (R.14, Am. Answer ¶¶ 15-22). The Court cannot rule, therefore, that Buck Bomb has admitted that "a contract for sale was made." *See* 810 ILCS 5/2-201(3)(b). Maurice's argument, moreover, ignores that a "party may state as many separate . . . defenses as it has, regardless of consistency." *See* Fed.R.Civ.P. 8(d)(3). The Court denies Maurice's motion to strike Affirmative Defense No. 11.

## CONCLUSION

For the stated reasons, the Court grants in part and denies in part Maurice's motion to dismiss and to strike. (R.20). The Court denies as moot Maurice's motion to dismiss the counterclaims and to strike the Fourth, Ninth, and Tenth Affirmative Defenses. The Court denies Maurice's motion to strike the Eleventh Affirmative Defense. The Court grants Maurice's motion to strike, without prejudice, as to the First, Second, Third, Fifth, Sixth, Seventh, and Eighth Affirmative Defenses. If Buck Bomb intends to re-plead these stricken defenses, it must file an amended pleading to that effect on or before May 25, 2016. The Court cautions Buck Bomb, however, that any such amendment must be adequately pled and able to withstand a Rule 12(b)(6) challenge. *See Sloan Valve Co.*, 712 F. Supp. 2d at 749.

**Dated:** May 11, 2016                          ENTERED

_____
AMY J. ST. EVE
United States District Court Judge