**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MAURICE SPORTING GOODS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BB HOLDINGS, INC. d/b/a BUCK BOMB, ) <br> ) <br> Defendant. ) <br> ) | No. 15-cv-11652 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maurice Sporting Goods, Inc. ("Maurice") has moved the Court to dismiss Count II and III of Defendant BB Holdings, Inc., d/b/a Buck Bomb ("Buck Bomb's") Counterclaim. (R. 83, Def.'s Counterclaim.) For the following reasons, the Court grants in part and denies in part Plaintiff's motion.

## PROCEDURAL HISTORY

On October 6, 2015, Plaintiff filed a Complaint in Illinois state court in Cook County against Defendant alleging counts for breach of contract and unjust enrichment. Defendant removed the Complaint to this Court on December 28, 2015. On May 11, 2016, the Court issued a Memorandum Opinion and Order (the "First Order") on Maurice's initial motion to strike and dismiss Defendant's affirmative defenses. (R. 31, First Order.) In relevant part, the Court struck without prejudice Defendant's First, Second, Third, Fifth, Sixth, Seventh, and Eighth Affirmative Defenses.

On May 25, 2016, Defendant filed a Second Amended Answer, reasserting five affirmative defenses: (1) prior material breach; (2) contribution; (3) unclean hands; (4) equitable

estoppel; and (5) statute of frauds.  On August 23, 2016, the Court issued a Memorandum Opinion and Order (the "Second Order") denying Plaintiff's motion to strike Defendant's prior material breach affirmative defense and striking Defendant's contribution, unclean hands, and equitable estoppel affirmative defenses.  (R. 46, Second Order.)  In striking Defendant's unclean hands and equitable estoppel defenses, which were based on three allegedly fraudulent statements Plaintiff's representatives made to Defendant's then-president, the Court found that Plaintiff's alleged misconduct sounded in promissory fraud, but Defendant failed to show that Plaintiff engaged in a fraudulent scheme in relation to the Buy-Back Agreement at issue in Plaintiff's Complaint.

On January 12, 2017, Defendant filed a Third Amended Answer, in which it asserts a Counterclaim that includes three counts against Plaintiff: (1) Breach of Contract; (2) Promissory Fraud; and (3) Tortious Interference.  (R. 83, Third Amended Answer.)

**BACKGROUND**

In considering this motion, the Court presumes familiarity with the background of this action—as set forth in the First and Second Orders—and does not recite a detailed background here.  The Court will, however, provide a brief factual background, particularly as it pertains to the two counts at issue in this motion.

Plaintiff is a wholesale sporting goods distributor.  (R. 2, Compl. ¶ 8.)  It works with vendors, such as Defendant, to sell and distribute products to retailers.  (*Id.* ¶ 11.)  For approximately eight years, Plaintiff and Defendant "had an ongoing business relationship pursuant to which Maurice would wholesale Buck Bomb products to retailers."  (*Id.* ¶ 10.)  During the course of that "business relationship," however, Defendant "unilaterally decided to sell Buck Bomb products directly to Maurice-supplied retailers."  (*Id.* ¶ 12.)  As a result, around

January 2015, the parties "formally sought to end their relationship." (*Id.*) Plaintiff alleges—and Defendant does not dispute—that in January 2015, "Maurice and Buck Bomb entered into a written agreement via e-mail wherein Maurice agreed to return all Buck Bomb product in Maurice's possession for which it had received an invoice from Buck Bomb." (*Id.* ¶ 14; R. 14, Am. Answer ¶ 14) (the "Buy-Back Agreement.")[1] Defendant agreed to buy back the product in Plaintiff's inventory, subject to certain credits. (Compl. ¶ 15.)[2] Plaintiff alleges that Defendant has failed to remit payment of $88,932.66 in breach of the parties' written agreement. (*Id.* ¶ 20.)

In its Third Amended Answer, Defendant alleges that its eight-year "business relationship" with Plaintiff relating to Plaintiff's wholesale of Defendant's products to retailers constituted a binding "distribution agreement" ("the Distribution Agreement"). (R. 83, Third Am. Answer 11, ¶¶ 34-36.) The parties memorialized the Distribution Agreement in purchase orders, invoices, and a written vendor agreement. (*Id.* 12, ¶ 37.) Defendant alleges that Plaintiff breached this agreement both by failing to make timely payments on invoices for ordered product and by "failing to use its best efforts to meet the Walmart sales forecast" for 2014. (*Id.* 12, ¶¶ 39-40.)

Defendant alleges that in early 2014, it reached an agreement with Walmart to distribute its product to Walmart directly. (*Id.* 17, ¶¶ 72-73.) Although Plaintiff assured Walmart and Defendant that it would continue to distribute the product through 2014, Defendant alleges that Plaintiff actually engaged in a scheme to defraud Defendant as revenge for Defendant's termination of the parties' relationship and to develop a competitor product. (*Id.* 14, ¶¶ 45-46.) According to Defendant, Plaintiff's scheme was designed to convince Defendant to continue its

---

[1] Defendant further admits that Plaintiff has complied with the terms of this written agreement. (R. 83, Third Am. Answer ¶ 17.)
[2] Defendant denies this specific allegation. (R. 83, Third Am. Answer ¶ 15.)

business relationship with Plaintiff under the assumption that Plaintiff would continue to distribute its product, even though Plaintiff had no intention of doing so.  (*Id.* 13, ¶ 46.) Defendant claims that Plaintiff's goal was to "sabotage" Defendant's product sales both as revenge against Defendant and to develop a market share for Plaintiff's competitor product.  (*Id.* 13, ¶ 47.)

As part of Defendant's alleged scheme, in April 2014, Rick Schmidt, Defendant's President, participated in a telephone call with Brad Stevenson, Plaintiff's executive, in which Stevenson told Schmidt that Plaintiff would continue to use its best efforts, consistent with past years, to distribute Defendant's product to Walmart and meet Walmart's sales forecasts.  (*Id.* 14, ¶¶ 49-51.)  Defendant alleges that Stevenson knew Plaintiff had no intention of using its best efforts to distribute Defendant's product to Walmart.  (*Id.* 14, ¶ 52.)  Defendant claims that Mike Shannon and Joe Mulheim, Plaintiff's employees, also told Schmidt in telephone conversations in April 2014 that Plaintiff would use its best efforts to distribute Defendant's product to retailers, even though they knew Plaintiff had no intention of doing so.  (*Id.* 14-15, ¶¶ 53-60.) Defendant alleges that it reasonably relied on these statements, which were intended to mislead Defendant, based on the parties' longstanding business relationship, and Defendant would not have continued the parties' Distribution Agreement had it not been for these statements.  (*Id.* 15-16, ¶¶ 61-65.)  When Plaintiff did not perform its distribution services, Defendant suffered losses and ultimately PEAK Rock, another company, purchased Defendant at a reduced price.  (*Id.* 16, ¶¶ 66-68.)  Defendant also alleges that Plaintiff's actions not only reduced its 2014 sales, but also reduced its 2015 sales to Walmart because Walmart reduced its sales forecast for 2015

4

based on Defendant's poor sales in 2014, which resulted from Plaintiff's failure to use its best efforts to distribute Defendant's product. (*Id.* 18, ¶¶ 87-88.)

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under the federal pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). In ruling on a Rule 12(b)(6) motion, district courts may also consider documents attached to or referenced in the pleadings without converting the motion into a motion for summary judgment, as long as the documents are referred to in the complaint and central to the claims. *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012).

Beyond the requirements of Rule 12(b)(6), Rule 9(b) requires all allegations of fraud or mistake to be "stated with particularity." *Camasta*, 761 F.3d at 737 (citing Fed. R. Civ. P. 9(b)). Circumstances constituting fraud include "the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Camasta*, 761 F.3d at 737. In other words, a party must describe the "who, what, when, where, and how of the fraud."

5

*Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) (citation omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## ANALYSIS

Plaintiff first argues that the Court should dismiss Defendant's tortious interference and promissory fraud claims because the Court, in the Second Order, has already dismissed Defendant's promissory fraud claims with prejudice and Defendant cannot now re-litigate those issues. Alternatively, Plaintiff argues that the Court should dismiss Defendant's claims because Defendant fails to allege a fraudulent scheme with the required particularity. The Court addresses each argument in turn.

### I. Law of the Case Doctrine

Plaintiff first argues that the Court should dismiss Defendant's tortious interference and promissory fraud claims because the Court has already struck Defendant's unclean hands and equitable estoppel affirmative defenses, both of which sounded in promissory fraud, and that ruling is now the "law of the case" and bars Defendant from pleading a counterclaim based on promissory fraud.

"Under the law of the case doctrine, a court generally should not reopen issues decided in earlier stages of the same litigation." *United States v. Harris,* 531 F.3d 507, 513 (7th Cir. 2008). The law of the case doctrine, however, is "no more than a presumption, one whose strength varies with the circumstances." *Galvan v. Norberg,* 678 F.3d 581, 587 (7th Cir. 2012) (quoting *Avitia v. Metro. Club of Chi., Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995)). "This presumption against reopening matters already decided reflects interests in consistency, finality, and the conservation of judicial resources, among others." *Minch v. City of Chi.,* 486 F.3d 294, 301 (7th

Cir. 2007). The Seventh Circuit has held that the law of the case "doctrine is highly flexible, especially when a judge is being asked to reconsider his own ruling." *Pickett v. Prince*, 207 F.3d 402, 407 (7th Cir. 2000) (citations omitted). Courts may depart from the law of the case doctrine if there exists "a change in the law, new evidence, or compelling circumstances." *Zhang v. Gonzales,* 434 F.3d 993, 998 (7th Cir. 2006).

Here, the law of the case doctrine does not apply because the Court's earlier striking of Defendant's affirmative defenses did not decide the question at issue here, which is whether Defendant has sufficiently alleged a claim of promissory fraud or tortious interference in relation to the parties' Distribution Agreement. While Defendant's affirmative defenses did sound in promissory fraud and did allege a scheme to defraud that is similar to that which Defendant has alleged in its Counterclaim, the Court did not strike these defenses solely based on Defendant's failure to sufficiently allege a scheme to defraud. Instead, the Court struck Defendant's affirmative defenses in large part because Defendant failed to connect the alleged fraudulent scheme or any of Plaintiff's alleged misrepresentations to the Buy-Back Agreement upon which Plaintiff's Complaint relies. (Second Order, 13.) Put differently, the Court found that Defendant could not assert affirmative defenses that were unrelated to "the transaction complained of" in Plaintiff's Complaint. In its Counterclaim, however, Defendant does not allege a scheme to defraud in relation to the Buy-Back Agreement. Instead, Defendant alleges that Plaintiff engaged in a scheme to defraud in relation to the parties' Distribution Agreement. This is a separate claim related to a separate alleged transaction, and as such, the Court's earlier decision does not bar this claim.

## II. Defendant's Fraud Allegations

### A. Pleading Standard

Defendant has alleged promissory fraud,[3] and thus, its allegations are subject to both Rule 9(b)'s pleading standard for fraud and the Seventh Circuit's stringent pleading requirements for promissory fraud. Illinois courts have generally declined to recognize promissory fraud claims "because fraud is easy to allege and difficult to prove or disprove. Thus, the burden on a plaintiff claiming promissory fraud is deliberately high." *Bower v. Jones,* 978 F.2d 1004, 1012 (7th Cir. 1992) (citation omitted). This approach, which is consistent with the mandates of Rule 9(b), is necessary to deter "claimants with a straightforward breach of contract claim from open[ing] the door to tort damages by alleging that the promises broken were never intended to be performed." *Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 988 (N.D. Ill. 2006) (quotations and citations omitted). To overcome the bar against promissory fraud claims, a party must show that the fraud "either is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995). The Seventh Circuit has explained that "in order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent." *Bower*, 978 F.2d at 1012 (quoting *Hollymatic Corp. v. Holly Systems, Inc.*, 620 F. Supp. 1366, 1369 (N.D. Ill. 1985). A fraudulent scheme exists where "a party makes a promise of performance, not intending to keep the promise but intending for

---

[3] Defendant's tortious interference claim also sounds in promissory fraud as it is dependent on the same fraudulent scheme allegations that support Defendant's promissory fraud claim. Accordingly, Defendant's tortious interference claim is also subject to the stringent pleading requirements for promissory fraud.

8

another party to rely on it, and where the other party relies on it to his detriment." *Bower*, 978 F.2d at 1011.

### B. Count II—Promissory Fraud

Plaintiff first challenges Defendant's promissory fraud allegations. Promissory fraud "is a false representation of intent concerning future conduct, such as a promise to perform a contract when there is no actual intent to do so." *Houben v. Telular Corp.*, 231 F.3d 1066, 1074 (7th Cir. 2000) (citation omitted). As noted above, Defendant must allege specific, objective facts showing that Plaintiff engaged in a fraudulent scheme with no intent of performing its obligations under the Distribution Agreement. Plaintiff argues that Defendant has not met this standard because its allegations are mere conclusory assertions of a fraudulent scheme without the necessary supporting facts.

Courts have rejected promissory fraud claims where the party asserting promissory fraud has asserted only generalized, conclusory allegations about broken promises that allege to be a fraudulent scheme. In *Zic v. Italian Gov't Travel Office*, 130 F. Supp. 2d 991, 995–96 (N.D. Ill. 2001), for example, the court rejected a promissory fraud claim because although the plaintiff alleged several "promises made and unfulfilled," none of his conclusory allegations pointed to any specific manifestations of fraudulent intent. The court noted that fraudulent intent was especially unlikely because a lengthy period of time passed between the defendant making the promise and when the defendant broke the promise.

Similarly, in *Nat'l Painting, Inc. v. PPG Architectural Finishes, Inc.*, No. 14 C 8054, 2015 WL 1593008, at *4 (N.D. Ill. Apr. 1, 2015), the court rejected a promissory fraud claim where the plaintiff alleged that the defendant had made false statements to induce the plaintiff to enter into a contract. The court reasoned that the plaintiff made no allegations of a pattern and

9

all of the plaintiff's assertions of fraudulent intent were based on "circumstantial evidence and inference." *Id.* The court noted although the plaintiff alleged that the defendant "made the allegedly fraudulent representations multiple times, such an allegation, without more, does not raise plaintiff's claim to an actionable promissory fraud case." *Id.* Ultimately, the court concluded that because there was no larger pattern of deception by the defendant, plaintiff had "merely repackaged its breach-of-contract claim as a claim for fraud." *Id.* (citation omitted); *See also Rosenblum v. Travelbyus.com, Ltd.,* No. 01–C–6441, 2002 WL 31487823, at *3 (N.D. Ill. Nov. 6, 2002) (rejecting general allegations of a fraudulent scheme because there were no specific manifestations of fraudulent intent and a "fraud claim cannot be supported by allegations that promises were broken and therefore were never intended to be kept"); *Int'l Star*, 451 F. Supp. 2d at 988–89 (rejecting promissory fraud claim for failing to allege sufficient specific, objective facts because plaintiff alleged only one supposedly false representation and did not provide the specific dates or content for that representation).

In contrast, in cases where the plaintiff is able to allege a specific pattern of misrepresentations, including the person who made the misrepresentation and the time and place at which he did so, courts will allow promissory fraud claims to survive a motion to dismiss. In, *Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, No. 01 C 8591, 2005 WL 843297, at *13 (N.D. Ill. Jan. 20, 2005), *aff'd*, 541 F.3d 719 (7th Cir. 2008), for example, the court found that the plaintiff had sufficiently alleged promissory fraud because it had "adequately pled facts setting forth 'the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" (citation omitted). Specifically, the court explained that the defendant used multiple misrepresentations about the scope of his authority to induce the

plaintiff to meet and enter into an agreement with the defendant despite the fact that the defendant had no authority to enter such agreement. *Id.*

Similarly, in *Lane v. Le Brocq*, No. 15 C 6177, 2016 WL 5955536, at *7 (N.D. Ill. Oct. 12, 2016), the defendant, who made the promissory fraud claim, alleged that the plaintiff made at least two false promises that she would support him if he left their firm and opened his own law practice. These promises induced the defendant to quit his job, and when he did, the plaintiff took several actions to impair his new business. *Id.* The court found that these allegations were sufficient to support a promissory fraud claim because they alleged a pattern of misrepresentations constituting a scheme to defraud. *Id. See also Advanced Ambulatory Surgical Ctr., Inc. v. Cigna Healthcare of Ill.*, No. 13 C 7227, 2014 WL 4914299, at *4 (N.D. Ill. Sept. 30, 2014) (permitting promissory fraud claim to proceed where plaintiff alleged that defendant made multiple misrepresentations about reimbursing plaintiff for its services); *Andrews v. Gerace*, No. 13 CV 1521, 2014 WL 4627383, at *9 (N.D. Ill. Sept. 15, 2014) (finding plaintiff adequately alleged promissory fraud where she claimed that she bought 50 percent share in businesses based on defendant's false promise to split profits equally with her); *Stamatakis Indus., Inc. v. King*, 520 N.E.2d 770, 773 (Ill. App. Ct. 1987) (plaintiff adequately alleged promissory fraud where defendant made false statements during extended negotiations promising to comply with a contract for the purchase of equipment and enter into a five-year employment agreement knowing that he had no intention of doing so).

Here, accepting Defendant's well-pleaded facts as true and drawing all reasonable inferences in its favor, Defendant has adequately alleged promissory fraud. Like in *Lane* and *Extra Equipamentos*, Defendant has alleged that Plaintiff made multiple misrepresentations in a scheme to defraud and harm Defendant. More importantly, Defendant has specifically alleged

11

"facts setting forth the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Extra Equipamentos*, 2005 WL 843297, at *13. Defendant has alleged that, in the course of three distinct telephone conversations in April 2014, Plaintiff's employees—specifically, Mike Shannon, Joe Mulheim, and Brad Stevenson—intentionally made false promises that Plaintiff would use its best efforts to distribute Defendant's product. (Third Am. Answer 14-15, ¶¶ 49-60.) While Plaintiff argues that it had no plausible economic motive for defrauding Defendant and risking its reputation with its wholesale customers, Defendant has alleged that Plaintiff's employees made these promises to induce Defendant to continue its business relationship with Plaintiff, while Plaintiff undersold Defendant's product as revenge for severing the parties' business relationship and developed a competing product. (*Id.* 14, ¶¶ 45-47.) At this stage, Defendant has sufficiently alleged that Plaintiff made a series of strategic misrepresentations that were "embedded in a larger pattern of deception" intended to induce Defendant's reliance and harm Defendant. *Desnick*, 44 F.3d at 1354.

Accordingly, the Court denies Plaintiff's motion to dismiss Defendant's promissory fraud counterclaim.

### C. Count III—Tortious Interference

Plaintiff next challenges Defendant's tortious interference claim. In Illinois, the elements of a claim of tortious interference with a business relationship or expectancy are: (1) the claiming party reasonably expected to enter into a business relationship; (2) the other party was aware of the claiming party's expectation; (3) the other party purposefully prevented the claiming party's business relationship from developing; and (4) the claiming party has suffered harm as a result of

the other party's interference.  *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009).

Here, Defendant has sufficiently alleged the elements of tortious interference with its business relationship or expectancy with Walmart.  Defendant has alleged that it reasonably expected to enter into an independent business relationship with Walmart and that it explicitly informed Plaintiff of this business expectancy by notifying its employees of Walmart's approval of the new relationship.  (Third Am. Answer 17, ¶¶ 72-74.)  Defendant has further alleged that Plaintiff purposefully prevented it from entering into an independent business relationship with Walmart in 2014 and then undersold Defendant's product, which cost Defendant several hundred thousand dollars in profits in that fiscal year.  (*Id.* 17, ¶¶ 80-82.)  Defendant has also alleged that, due to Plaintiff's failure to use its best efforts to distribute Defendant's product in 2014, Walmart reduced Defendant's sales forecast in 2015, which ultimately deprived Defendant of lost sales and profits.  (*Id.* 18, ¶¶ 88-89.)  Viewing these allegations in the light most favorable to Defendant and drawing all reasonable inferences in its favor, Defendant has stated a tortious interference claim in relation to its business relationship with Walmart that is plausible on its face.  Defendant has not, however, sufficiently alleged a claim for tortious interference in relation to PEAK Rock's purchase of Defendant because Defendant has failed to allege that Plaintiff was aware that PEAK Rock was in negotiations to purchase Defendant or that Plaintiff was aware that Defendant had any expectancy of profiting from such a sale.

Plaintiff's primary arguments against the sufficiency of Defendant's tortious interference claim are (1) that Defendant has failed to allege the underlying promissory fraud, and (2) that Defendant's tortious interference allegations are deficient because they are based on "information and belief."  These arguments fail.  First, as discussed above, Defendant has

13

sufficiently alleged that Plaintiff engaged in a scheme to defraud Defendant and harm its business. Second, while Defendant's allegations of the fraud that underlies its tortious interference must be plead with particularity, allegations that are unrelated to the circumstances of that fraud need not meet that high standard. Here, Defendant has made two allegations upon information and belief: (1) that Walmart will not allow suppliers to exceed product sales forecasts, and (2) that Walmart's 2015 sales forecast for Defendant's product was below $1.8 million based on Defendant's product's poor sales in 2014. (*Id.* 18, ¶¶ 87-88.) These allegations have nothing to do with the circumstances of the underlying fraud or Plaintiff's fraudulent scheme. The allegations merely allege the consequences of Plaintiff's fraud and the damages Plaintiff's fraud caused. As a result, the higher pleading standards of Rule 9(b) do not apply to these allegations, and at this stage, these allegations are sufficient. *Williams v. Sabin*, 884 F. Supp. 294, 297 (N.D. Ill. 1995) ("Rule 9(b) does not require any greater detail in pleading damages unless the information is necessary to give the defendant notice of the claims against him."); *Hometown Sav. & Loan Ass'n, F.A. v. Moseley Sec. Corp.*, 703 F. Supp. 723, 726 (N.D. Ill. 1988) ("The plain language of Rule 9(b) requires a plaintiff in a fraud case to plead the circumstances of the fraud with particularity, not the impact of the fraud or the events occurring as a result of the fraud.").

Accordingly, the Court grants Plaintiff's motion to dismiss Defendant's tortious interference claim as to PEAK Rock's purchase of Defendant and denies the remainder of Plaintiff's motion to dismiss.

## CONCLUSION

For the stated reasons, the Court grants in part and denies in part Plaintiff's motion to dismiss.

Dated: June 22, 2017

ENTERED

_____
AMY J. ST. EVE
United States District Court Judge